IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| N.A.R., Inc., | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff, | ) | Case No. 20101043-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Aubrie Vermillion, | ) | (July 12, 2012) |
| | ) | |
| Defendant and Appellee. | ) | 2012 UT App 191 |
| _____ | ) | |
| | ) | |
| Neil B. Baird, D.D.S., | ) | |
| | ) | |
| Appellant. | ) | |

-----

Third District, Salt Lake Department, 070908175
The Honorable Robert K. Hilder

Attorneys:     Derek A. Coulter and Robert T. Tateoka, Draper, for Appellant
              Ronald Ady, Salt Lake City, for Appellee

-----

Before Judges Voros, Thorne, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Neil B. Baird, D.D.S., appeals the trial court's denial of his motion for attorney fees against Aubrie Vermillion and her counsel. Specifically, Baird challenges the trial court's ruling that his privity of contract with N.A.R., Inc. precluded his claim for attorney fees associated with the collection action between N.A.R. and Vermillion that the parties ultimately settled. We affirm.

¶2 Baird performed dental services for Vermillion; Vermillion refused to pay for those services based upon her claim that Baird provided defective care. As a result of a written agreement between Baird and N.A.R. (the assignment-of-debt agreement), Baird assigned Vermillion's debt to N.A.R. and N.A.R. filed a collection action against Vermillion in an effort to collect the debt. Baird was not a party to the collection action. In the course of the suit, Vermillion filed a counterclaim against N.A.R. asserting Utah Consumer Sales Practices Act violations. Vermillion subsequently served a subpoena duces tecum on Baird, seeking his deposition and production of documents, and Baird incurred substantial attorney fees in moving the trial court to quash the subpoena and limit the scope of his deposition. Baird also requested his attorney fees as a sanction against Vermillion and her counsel. In its rulings on the discovery disputes between Vermillion and Baird, the trial court granted Baird's motion to quash but reserved the issue of Baird's motion for attorney fees.

¶3 Vermillion and N.A.R. settled all claims on the day of trial after a jury had been empaneled. In particular, N.A.R. released any claims it had or that could be brought against Vermillion, which release extended to "[N.A.R.'s] officers, agents, Dr. Baird, his officers, agents, or their attorneys . . . ." Additionally, Vermillion and N.A.R. agreed that "everyone bears their own attorneys fees, costs and expenses." Baird was present, sans counsel, during the settlement proceedings, but Baird never addressed the court or objected to the settlement. Shortly after the settlement agreement, Baird renewed his motion for attorney fees, which the trial court dismissed as part of its ruling enforcing the settlement. The trial court reasoned that Baird was in privity of contract with N.A.R. and was therefore bound by the settlement agreement.

¶4 We agree with the trial court's reasoning and its denial of Baird's motion for attorney fees because Baird's privity of contract with N.A.R. and the settlement agreement between N.A.R. and Vermillion precluded Baird from raising further claims against Vermillion, including any claim for attorney fees.[1]

---

1. The trial court described Baird as a privy. Pursuant to the assignment-of-debt agreement between Baird and N.A.R., however, Baird was technically the obligor/assignor, making N.A.R. the assignee/obligee. *See generally Sunridge Dev. Corp.*

(continued...)

¶5    Utah case law provides clarification of privity in a collateral estoppel context, which is useful to an understanding of privity in this matter. Collateral estoppel is not involved here because there was a settlement agreement rather than a judicial determination. Nonetheless, the preclusive effect of the settlement agreement is analogous. For example, in *Searle Brothers v. Searle*, 588 P.2d 689 (Utah 1978), the supreme court explained, "The legal definition of a person in privity with another, is a person so identified in interest with another that he represents the same legal right. This includes a mutual or successive relationship to rights in property." *Id.* at 691 (applying privity to "judgments or decrees of court," for which "privity means 'one whose interest has been legally represented at the time,'" and holding that privity did not exist where the plaintiffs claimed an "independent and separate partnership interest" in the property involved, which "arose before the commencement of the first action, not subsequent thereto" (citation omitted)); *cf. Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 27, 110 P.3d 678 (outlining the elements of collateral estoppel).

¶6    Unlike in *Searle*, where the plaintiffs did not share the same "legal right" or a "mutual or successive relationship to rights in property" due to their "independent and separate partnership interest," *Searle*, 588 P.2d at 691, Baird and N.A.R. shared the same legal right to any amount ultimately collected from Vermillion. As provided in their assignment-of-debt agreement, Baird assigned the Vermillion debt to N.A.R., but the dentist maintained a 50% interest in the claim. Baird's retention of the 50% interest in the claim demonstrates that both he and N.A.R. had the same legal right, or property

---

1. (...continued)
*v. RB&G Eng'g, Inc.*, 2010 UT 6, ¶ 15, 230 P.3d 1000 (Utah 2010) (explaining that "the relationship between the assignee and obligor is not best characterized as a form of privity, but rather as a continuation of the rights and liabilities of the assignor as evidenced by the assigned agreements and any further limitations stated in the assignment itself"). Although an assignment may not be "best characterized as a form of privity," *see id.*, an assignee is a fortiori in privity with an assignor. Because it does not affect our analysis, we use the trial court's and parties' characterization of the relationship.

interest, at stake in the collection of the debt. Further, this legal right was not affected by the fact that Baird served as a fact witness.

¶7 Again in a collateral estoppel context, a court may evaluate whether a party has control over the litigation in order to determine whether privity exists. *See Baxter v. Utah Dept. of Transp.*, 705 P.2d 1167, 1169 (Utah 1985) (stating that "[t]o establish privity, [a] witness also must have had some control over the litigation" and holding that the fact witness was not in privity to the preceding action because the only direct connection he had with the suit was that he appeared as a witness). Similarly, in *Brigham Young University v. Tremco Consultants, Inc.*, 2005 UT 19, 110 P.3d 678, the supreme court analyzed whether the collateral estoppel elements were met by applying "the concept of privity based on a nonparty's control of the litigation." *Id.* ¶¶ 32-34.

¶8 In contrast to *Baxter*, Baird retained some control over the litigation between N.A.R. and Vermillion. He had a contractual right to decide whether to commence litigation and whether to terminate N.A.R's prosecution of the claim at any time prior to its conclusion. Baird contends that he had no control over the litigation or the settlement because the assignment-of-debt agreement granted N.A.R. the exclusive right to compromise and settle the claim. On the contrary, the assignment-of-debt agreement required N.A.R. to gain approval from Baird before settling, reducing, or compromising a debt. Baird also argues that since he was independently represented by counsel who was not made aware of the settlement agreement, he was not in privity with N.A.R. But Baird's representation was limited to his involvement in the case as a fact witness, rather than his 50% interest in the claim.

¶9 Finally, having a statement of the settlement agreement on the record instead of a formal written document does not negate the settlement agreement. "It is a basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds." *Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987) (citing 17 Am. Jur. 2d *Contracts* § 67 (1964)).

¶10 Because Baird maintained an interest in the collection action and control over the litigation, he is in privity of contract with N.A.R. Thus, he is bound by the settlement

agreement.[2] Accordingly, we conclude that the trial court correctly enforced the settlement agreement and denied Baird's motion for attorney fees.

¶11 Affirmed.

_____
Michele M. Christiansen, Judge

-----

¶12 WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
William A. Thorne Jr., Judge

_____

2. It is therefore unnecessary for us to decide whether claim preclusion barred Baird's motion for attorney fees.