[Civ. No. 20600.   First Dist., Div. Three.   May 23, 1963.]

EMMA P. WEAVER, Plaintiff and Appellant, v. GEORGE BAY et al., Defendants and Respondents.

560

Volney J. Tidball for Plaintiff and Appellant.

Machado, Feeley & Machado, Daniel M. Feeley and Angelo T. Pestarino for Defendants and Respondents.

DEVINE, J.—Appellant Emma P. Weaver, beneficiary under a deed of trust, brought this action for declaratory judgment, for deficiency judgment, and for damages for waste allegedly impairing the security. The action is against the trustors, George and Myrtle Bay, against Goldie Selfridge, who expressly became an obligor on the note, and against strangers to the title, Calvin, Maureen, Elzy and Marie Jordan. The trial court (1) declared that plaintiff is entitled to file notice of default and to proceed under power of sale, and to recover from the sale the balance due; (2) found that certain changes to the real property made by Selfridge did not damage the real property but enhanced its value, and that the value exceeds the balance due on the note; (3) found that respondents committed no waste; and (4) declared that the deed of trust is one for purchase money and that no deficiency judgment could be had.

*Facts and Decision on Issue of Deficiency Judgment*

Plaintiff filed notice of appeal from that part of the judgment limiting her recovery to foreclosure, and from the judgment in favor of the Bays and the Jordans, but she also proceeded to sell the property under power of sale, and she bid it in at $12,000 (there being no other bids), which was about $4,000 less than the amount then due on the note. It is not clear whether appellant presently contends that she should have been awarded deficiency judgment, but the pre-

trial order states this contention to be one of the issues. Deficiency judgment could not have been awarded because the deed of trust and chattel mortgage were made to secure the purchase price (Code Civ. Proc., § 580b). The same rule applies to the assuming grantee, Selfridge (*Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200 [114 P.2d 592]).

Besides, when plaintiff chose to sell under the power of sale, which the judgment declared it was her right to do, she incurred another proscription against deficiency judgment, namely, that contained in section 580d of the Code of Civil Procedure, which forbids deficiency judgment after exercise of power of sale.

### Facts and Decision on Issue of Waste or Impairment of Security

Appellant contends that certain acts of respondents amounted to waste or conversion which impaired her security and that she should have been awarded judgment for these alleged tortious acts. Although it is doubtful that appellant would be entitled to reversal of the judgment even if her contentions were correct, because she chose to avail herself of the benefit of the judgment which declared it her right to exercise the power of sale (thus declaring acceleration of the whole amount of the debt), we shall nevertheless analyze the asserted acts of waste or conversion.

In 1955, appellant Emma P. Weaver sold her dairy, equipment and cattle in Madera County to respondents George and Myrtle Bay, receiving $2,000 in cash, a promissory note for $24,000 and a deed of trust on the real property and a chattel mortgage on the cattle and equipment. The chattel mortgage provides that if any of the cattle are removed by any means, they are to be replaced, and that if any cattle or implements are removed, there shall be acceleration of the debt. The Bays never intended to run the dairy themselves. For about two years they allowed their son Walter and a man named Whatley to manage the dairy. The sale by appellant to the Bays included 45 head of cattle which the Bays mortgaged to appellant. When the Bays' son and Whatley left the dairy in 1957, there were 20 head, according to testimony of the successor in the management, Calvin Jordan. There is no testimony of any waste or conversion by the Bays personally, their son and Whatley were not made defendants, there is no testimony that any cattle were sold, and there is no testimony that at the point of termination of the tenancy

of Walter Bay and Whatley there was any impairment of security, considering the dairy and cattle together as such security. In fact, there is no testimony at all as to value of security at this point.

The next manager of the dairy was Calvin Jordan, with his wife Maureen, daughter of the Bays. When the Jordans entered the property there were 20 head of cattle and when they left there were 40, 25 of which were subject to a chattel mortgage to a dealer who had sold the Jordans 25 cows. There is conflicting testimony as to disappearance of certain furniture, but according to that which is most favorable to respondents, nothing more than a household refrigerator had been removed. Again, at this point there is no testimony whatever as to impairment of the security.

Elzy Jordan, brother of Calvin, and his wife Marie were made defendants because they purchased a home in San Jose from Selfridge and in the application for an FHA loan it was stated that part of the purchase price had been obtained by the sale of 40 cattle. The application in which this statement appears was made not by any of the Jordans, but by the bank, and the bank states that its information was obtained from a real estate broker. Thus, this single statement which is used against Elzy Jordan and his wife, is hearsay at least twice removed. Elzy Jordan and his wife at no time managed the dairy or even visited it.

■ Finally, there is the Selfridge tenure. On January 20, 1959, the Bays sold the dairy and cattle to respondent Selfridge. Appellant contends that the evidence shows that the sale was without her consent, and we take it that it is her point, therefore, that the Bays became liable for any waste committed by Selfridge. The point of lack of consent is wholly without merit on appeal because written consent was given by appellant, and appellant accepted the benefit of an increased monthly payment by Selfridge and a higher interest rate. Appellant testified she was ill at the time and did not understand the transaction, but the trial court found otherwise.

Mrs. Selfridge sold some of the cattle and mortgaged others, and it is quite possible that a cause for waste or impairment of security or conversion could have been made out against her. Here again, however, appellant produced no evidence of the value of the total security at the time of trial, and on the other hand, Selfridge produced testimony by a real estate broker that the value of the property was $27,000, and

her own testimony that she had received two offers, one for $27,500 and the other for $31,000, sums considerably in excess of the debt.

Appellant's argument is that she did not receive full payment of her note upon the sale made after judgment and that, therefore, the various respondents are responsible for the balance because of their actions, as described above. This, however, is not the test. The antideficiency statutes impliedly recognize that there are many elements other than tortious conduct on the part of trustors and mortgagors which will prevent the collection of the debt, particularly of a purchase money security, such as failure of an enterprise through inept management, too high a price paid for the property, adverse economic conditions, and the like. Under certain circumstances, damages against mortgagors and third persons may be had when their acts have rendered a mortgage insufficient security (*Easton* v. *Ash*, 18 Cal.2d 530, 539 [116 P.2d 433]), but the trial court, in holding that appellant has not offered sufficient evidence to justify such damages in this case, acted within judicial discretion which it is not our function to disturb.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.